O’Neaul, J.
delivered the opinion of the Court.
In discussing these cases, I shall not pretend to consider the various grounds, which have been taken in arrest of judgment, for a nonsuit, or a new trial, in the order in which they have been set down in the brief; but in that order.and arrangement, which appears to me to be the most convenient for a correct understanding and decision of the cases.
*374 The first question which I shall notice is, whether the actions against the obligors ought to have been several, and not joint. This question necessarily involves two considerations; 1st, as to joint actions against the sheriff and his sureties: and 2nd, as to actions against the sheriff alone. The act of 1795, after directing that the sheriffs of the several districts, with no less than five, nor more than twenty securities, shall execute bonds in certain sums, conditioned for the faithful discharge of the duties of their respective offices, provides, that “ the persons who shall be approved of and join in the bonds prescribed in this act, shall severally be held and deemed liable, each one for his equal part of the whole sum, in which the bond is given, (the said sum to be divided into as many equal parts as there shall be securities in the said bond,) and no more than such equal part, shall be in any court recoverable of or from any one of the said securities, his heirs, executors or administrators; but nothing fin this act contained shall operate to prevent the securities from having and maintaining amongst one • another, just and equitable aid and contribution, as in other cases of securityship, where there are several securities.” 2 Faust, 9.
In the construction of the act, were we to look to the clause alone, which I have just cited, there would be little difficulty in concluding, that the bond to be given under it was intended to be several and not joint. But the first clause directs, that the several sheriffs, with not less than five, nor more than twenty securities, shall enter into a bond in a sum afterwards prescribed in the act. This shows that it was intended, that they should be bound in a gross sum, and for it, as a penalty, that they should be jointly liable. The effect of the clause cited is, to relieve the sureties from the damages which may be assessed to the extent of the penalty, upon the payment of their respective aliquot shares of it. It may be regarded as an equitable condition annexed by law to the bond, that the sureties should each, to the amount of his equal share of the penalty, guarrantee the official good conduct of the sheriff. Still the whole penalty is the security for the payment of this smaller sum. This defence too, it must be remarked, arises out of the condition : it is matter in discharge of the penalty, and cannot therefore have the effect of discharging it, but upon beeing pleaded, and payment averred. The penalty is the debt demanded, and in a declara *375 iion upon it, the objection now raised would not appear, until the condition was set out on oyer; for until then, it wbuld not even appear to be a sheriff’s bond. Could the defendants set out the condition and demur, because the liability under the condition was several and not joint 1 It is clear they could not. For the Court would necessarily look to the penalty, and if the obligation to pay it was. joint, the several liabilities, arising out of the condition, could not change the previous joint debt. The bond in the cases before us is joint in its terms ; it is a common law instrument, taken under an act of the Legislature; and it must therefore be sued upon, and treated in all legal proceedings, according to common law rules. Being joint in its terms, all the obligors may be sued jointly. If the act, expressly, or by necessary implication, had directed that they should be sued severally, then of course the actions must have been brought accordingly: but there is nothing in the act which requires us to commit such an outrage on a very general and familiar principle of the common law. Nominally the whole penalty is recovered against all the' sureties, but in effect the equal share of each is recovered against each ; and in the enforcement of the judgment care will be taken, that not more than this shall be collected. The word “ recoverable,” used in the act, was not intended to mean the recovery by judgment, but the ultimate collection of the amount so recovered. It is used as synonymous with “ collected,” so that that part of the clause might read, “ and no more than such equal part shall be in any court collected of or from any one of the said securities, his heirs, executors, or administrators.” Treating the bond as joint and not several, prevents multiplicity of suits; and all the objects of the act, as to the protection of the sureties, are attained by sufficient guards being provided, to prevent the joint judgment from being enforced against any oaer beyond his equal share of the penalty. If therefore, convenience and utility ought to have, any weight in deciding a doubtful question, this would make it at once preponderate in favour of the construction now contended for. This reasoning applies to the sheriff himself as as well as his sureties: but its force, as to him is much strengthened by the fact, that his liability under the act, the bond, and the condition, is for the whole penalty. In a just construction of the whole act, as to him, the boud may *376 be regarded as either joint or several, and he or his representatlves may he sued alone upon it.
Secondly. It has been contended, that the bond is void, because the penalty is twelve thousand dollars, whilst the act of 1795 has directed a bond to be taken for no more than seven thousand. It would be sufficient to say, that in the case of the Commissioners of the Treasury v. Davis, cited 2 N. & M. 426, it was decided, that although the bond of the sheriff was taken for a larger sum than that required by law, yet it was good : and that this decision has been recognized and confirmed in the cases of the State v. Mayson, 2 N. & M. 425, and the Treasurers v. Stevens, 2 M‘C. 107. But as the question has been again made and argued, with no little zeal and ingenuity, it is worthy of a passing notice, and of as much attention as my time and other duties will permit me to bestow on it. It is supposed that the bond, if not taken in exact conformity to the act, is void. But the act itself makes no such provision ; and unless it does, the objection is unavailing. For to .render a bond taken under a statute void, it must be so according to express enactment, or must be intended to operate as a fraud on the obligors, by colour of the law, or as an evasion of the statute. None of these things are found to exist in the case before us. The execution of the bond was the voluntary act of the sheriff and his sureties, and was intended to be a compliance with the act. Before entering on the duties of his office, he was required to execute a bond in a penalty of seven thousand dollars. The doing of this act was necessary to enable him to receive his commission : It was, in some degree, a part of, or rather the perfection of his title to the office. This being the consideration on which the bond before us was founded, it was good and lawful. The undertaking of himself and his sureties was, that he should faithfully discharge the duties of his office; and the covenant in this respect was that required by law. So far then there is nothing like a fraud on the obligors, or an attempt to evade the statute. But it is said, that the sureties are made liable, under this bond, for a greater sum, than by law they are required to be. If this was so, I am not prepared to say, that it would render the bond void. For it is a voluntary act, done without either actual or legal duress, upon, and for a good and lawful consideration, and purpose. The legal maxim that no one shall *377 be allowed to take advantage of his own wrong, might render it difficult for the obligors to raise such an objection: but it is obvious, that to the extent of the penalty required by law, the bond would be a good and legal security. This was the purpose for which it was intended to be executed: the obligors were willing to guarantee the sheriff’s official good conduct, so far, and in fact to a greater sum. This greater sum includes the less: and it is by reference to the act, and for the purpose of relieving the sureties, it is found that seven thousand dollars is the extent of the liability, contemplated by law to be cast upon them. They have, however, voluntarily assumed a greater : and it is on- ■ ly upon the ground of mistake, that they are intitled to be discharged from the penalty, which they have voluntarily imposed upon themselves, by the payment of a less one.
The greatest difficulty in the case arises from a technical rule in pleading. The declaration must count for the penalty of the bond, and if the count, or judgment, were for a sum, different from that contained in the bond, the judgment would be arrested. Hence the declaration or recovery cannot be for the penalty required by the act. Each must be for the penalty of the bond as it in fact exists: and the benefit of the objection must be awarded to the sureties in the assessment of damages under the condition. These can only be assessed to the amount of the penalty required by the act. This case is supposed to differ from Davis’ case in this, that the provisions of the two acts, under which that bond and this were taken, are not the same, as to the liabilities of the sureties. The act under which Davis’ bond was taken does not, as the act of 1795, provide that each of the sureties shall be only liable for his equal part of the penalty. It imposes upon them an entire, ultimate responsibility. But that could have made no difference in the question; for it was taken for a greater sum than was required by law, and, as in the case before us, it extended the liability of the obligors beyond it. But this was all the objection which could exist in that case or in this: if it was untenable in that case, it must necessarily be so in this.
Thirdly. Can the plaintiffs, as successors in office of the original obligees, maintain this action in their own names, without an assignment 1 That they can, has not been questioned for thirty years. Suits have been repeatedly brought and sustained *378 in the names of the successors of every public officer, on bonds executed by the obligors for the faithful performance of the duties of an officer, an administrator, or a guardian. Wherever a bond is executed to a public officer for the doing of an act, required by law, to be done by another officer, or to discharge a trust conferred according to law on sozne individual by the appointment of a public-officer, the bond in such a case is to be regarded as payable to the office and ziot to a named officer. In this respect public officers represent the people; they may be regarded as sole corporators, and intitled to take every thing belonging to their office by succession. The bond in these cases being to two named persons, as treasurers, and to their successors in office, and the plaintiffs, now before the Court, having, by succession, all the rights, which their office can confer upon thezn, they may legally maintain this action. Treasurers v. Wiggins, 1 M‘C. 568, and Dubose v. Hanks, decided at this place in December last, supra, p. 13.
Fourthly. It is urged that the declarations are insufficient, in ziot having averred that an execution against the sheriff had beezz returned nulla bona. In declaring on a sheriff’s bond, it is ozily necessary to declare ozi the penalty, without noticing the condition. This point was considered and discussed during the present term, in the analogous case of an administrator’s bond. Rice, Ordinary, v. Thomson, supra, p. 339. If, however, the declarations do set out the condition, but assign an insufficient breach, it would be fatal ozi demurrer, or in arrest of judgmezzt. In the case before us, sozne of the declarations set out the condition, and assigzi breaches, adznitted to be sufficient, unless they should have been accompanied with an averznezzt that an executiozi against the sheriff had been returned nulla bona. This necessarily z-aises two inquiries. 1st. Is it a necessary averment ? and 2d. Is not the defect, if one, cured by the verdict 1 I am satisfied, that in no case is it ziecessaiy to make such an averment. If the declaration were on the act itself, the provision under which this exceptiozi is taken, not being in the enacting clause, it would not be necessary to notice it: Bizt it must be borne in mind, that the declaration is on the bond, azid ozi settizig out the condition, it is only necessary to show, that it is broken, by assigning a specific breach. This is done by any instance of the sheriff’s failure to do his duty. The re *379 turn of nvMa bona on an execution, is a part of the evidence required by the act, before the sureties shall be made liable to damages under the bond, for the official misconduct of the sheriff. It is matter of defence for them, if they choose to avail themselves of it by plea; or they may fold their arms, and wait for the plaintiffs to produce that evidence, and upon their failure move for a nonsuit. But it is only an additional defence provided by law for the protection of the sureties ; it forms no part of the condition of the bond appearing on the record, and although necessary to be made out in proof, it is not necessary to allege it on the record, to enable the plaintiffs to maintain the suit. Treasurers v. M'Guire, Harp. 474. Same v. Securities of Neuby, 1 M‘C. 184.
It is now, however, too late to make the objection if the omission were a defect. If enough appears on the record to enable the Court to pronounce judgment, the objection in arrest of judgment cannot prevail. The condition of the bond on the record appears to be broken, and the plaintiffs are intitled to judgment for the penalty. In such a case, any thing which the plaintiffs were, bound to prove to intitle them to the verdict, will, after it, be presumed to have been proved, and its omission to be stated on the record is thus supplied. The omission of the averment in this case, if it had been necessary to be made, was only matter of special demurrer, was amendable, and is cured by the verdict. 1 Ch. Pl. 401-2. 2 Tidd’s Practice, 826.
Fifthly. With regard to the pendency of other suits on the same bond. The suits were brought by different persons, who were aggrieved by the official misconduct of the sheriff, and stood for trial at the same term. The act of 1795, 2 Faust, 9, provides “ that the bonds may at all times be sued for by the public or any private person, who shall or may think themselves aggrieved by any misconduct of any sheriff.” It would be a sufficient answer, therefore, to say, “ ita lex scripta est;” and that every one who is aggrieved, has the right to sue the bond, and hence that the plea could not be sustained. But we think it is our duty to provide a rule, by which the ends of the law can be answered without an endless multiplication of law suits. The first suit in which a verdict is had, establishes the factum of the bond, and the judgment in favour of the nominal plaintiffs is for the penalty. We are therefore of opinion, that after judgment *380 has been recovered upon the bond of a sheriff, it should stand as a gecurjty for any former or subsequent breach of it: and that any onei who may conceive himself aggrieved by the misconduct of the sheriff, should have the right to come in, and suggest the breach of the bond of which he complains, and pray execution for his damages; and upon serving a thirty day rule on the sheriff and his sureties, or as many as may be defendants, requiring them to plead to the suggestion, may for default of plea, or upon issue joined, have his damages assessed by the verdict of a jury, and have execution for the penalty, to enforce the payment of the damages assessed. In this proceeding it may be useful to conform, as near as the cases will admit of, to the forms which will be found in Gainsford v. Griffith, 1 Saund. Rep. 58, note 1.
The cases now before the Court, and considered as one case, are ten in number; and they may very properly be consolidated, for one judgment and execution will afford relief to all. A motion to consolidate is always addressed to the discretion of the Court; and if it will not delay the plaintiffs, and will relieve the defendant from unnecessary costs, and the actions are by the same plaintiffs, in the same right and form of action, it is always proper that it should be granted. In these cases no delay can take place, and the defendants will be relieved from the future costs of nine out of ten cases; the cases are in the names of the same plaintiffs on the record, and are in the same form of action, and indeed on the same instrument: they ought therefore to be consolidated. The case, in which the first verdict was rendered, is the one in which judgment must be entered and execution issued for all.
Sixthly. Are the admissions and confessions of judgment by ' the sheriff Bates, after he went out of office, admissible in evidence, to charge himself, and his sureties on his bond ? I place the admissions and confessions of judgment on the same footing : for I regard the confessions of judgment as nothing more than Bates’ hdmission, that as sheriff he had received so much money for the use of the plaintiff in each case. His admission of an official default is evidence against himself and his sureties, no matter when made. The only case, or dictum, supposed to be opposed to this, is that of the Bank v. Johnson, 1 Mill. 404. On looking into that case, it will be seen that it does *381 not decide this question: it is expressly reserved, and the Judges were divided in opinion upon it. It is true that the distinguished Judge who delivered the opinion, maintains the position, “ that admissions of an officer, after he has gone out of office, cannot be given in evidence to charge his sureties,” with all the learning, ingenuity, and ability for which he was so eminently distinguished. But a slight reflection satisfies me that he was mistaken. If the sheriff while in office, admits that he has received the money of a party,' the admission, it is conceded, would be evidence to charge the sureties. Why 3 not because the sheriff’s admission of itself, constitutes the charge against them: but because it furnishes reasonable evidence, that while sheriff he did receive the money, and is accountable for it in that character. Does not his admission, after he went out of office furnish the same reasonable evidence 3 I take it that it does. It is to charge himself; and the legal presumption is, that no one will falsely charge himself. Against him it would be the highest and best evidence: and against his sureties it must be, at least,prima facie evidence. For they are his privies in law ; and whatever will in law charge him, will charge them. But these admissions and confessions of judgment are only prima facie evidence against the sureties. They may show, that they were made by mistake, or by fraud and collusion between an insolvent sheriff and his creditors. If the sum, admitted or confessed by the sheriff, is greater than he was really liable for, this may be shewn by the sureties in their defence. In 5 Binney, 184, it was held that a judgment, in an action against a sheriff alone, of which his sureties have no notice, is not conclusive evidence in a subsequent suit, upon the recognizance against the sheriff and his sureties jointly. So too, the sureties may show that the admissions and confessions were for liabilities, for which they had not undertaken to guarantee the sheriff’s good conduct; as for debts due by him in his private capacity, or for fictitious and unfounded demands. 1 Stark. Ev. 189, 223, 243, 252. Cureton v. Shelton. 3 M‘C. 412. The opportunity of making this proof will be afforded to the sureties in these cases on submitting the condition of the bond to the jury, to assess the damages at the next term.
Seventhly. The next question we shall examine is, whether the former recoveries against Bates, by confession, are a good *382 plea in bar to the actions on the bond against himself and his suretjes> Generally a former recovery to be a good plea in bar müst be between the same parties on the record. There may be some exceptions, where satisfaction of the former recovery has " been made. As for example, if, in the cases before us, the judgments confessed ‘ by Bates had been satisfied, the recovery and satisfaction would have been a good plea in bar. For these two facts, together, would have shewn, that in this respect the condition of the bond was not broken. Looking to the record before us, and that set up by the plea, the plaintiffs are different, and on technical grounds this would dispose of the plea. But the subject is worthy of further examination, and on whatever merits the plea and defence may be supposed to rest, it cannot be sustained. The bond, as has already been shewn, is joint. The rule is that on a joint contract, all the obligors, covenantors or promissors, if alive, may be sued. If one is a bankrupt and has obtained his certificate, he must be sued jointly with the other joint contractors. He may plead his certificate in bar, and thereupon judgment will be awarded against the others, quasi survivors. 2 Maule & Selw. 23. Arch. Civ. Plead. 74. It is well settled, that if one joint-contractor is sued separately and a recovery had, and he is afterwards sued jointly with the others, he alone, against whom the recovery was had, can plead it in bar, and that the others have no right to make the objection, if he does not choose to rely on it. Sheehy v. Mandeville and Jamesson, 6 Cranch, 253. Collins v. Lemasters and Lee, decided at this place December. Term 1829. Neither of these cases, however, decide that it would be a good plea in bar for the defendant, against whom the recovery was had, in a joint action against all the contractors. I am satisfied it would not. For if it was, the party could never recover at all against the others: he must recover in a joint-action on a joint-contract against all the parties or none, except in the case of a certificated bankrupt, insolvent debtor, and perhaps an infant. Hence if the plea were good for one, it must he for all: and we have already seen that the others cannot plead it. The judgment against one of several joint-contractors, is a nullity; it may be arrested at any time before execution.
There is, however, another view of the question applicable to these and other cases of a similar character. I have already *383 had occasion to shew, that on the record here the plaintiffs are different from the plaintiffs in the former recovery. The recovery to be had here does not depend on the same cause of action as in the former case. The gist of this action is the bond. ° When this is established, the defendants may insist that the condition is not broken, and if the recovery could shew this, then it would be a bar. But instead of this appearing, it is on the contrary, evidence of the sheriff’s default and a breach of the condition. In the analogous cases of suits on administrator’s and guardian’s bonds, a recovery in the ordinary’s court, or in the court of Equity is necessary to charge the administrator or guardian and his sureties on the bond. In such cases it has never been questioned that the former recovery is no bar. For it is only the evidence of the default upon which the condition of the bond is declared to be broken. So here the recoveries are the evidence of default, and not of satisfaction, or abandonment of the right to recover for it in this action. Upon a just construction of the act of 1795, I think it obvious that it does contemplate this double recovery. It provides, that if in a particular case the sheriff is pursued to insolvency, his sureties shall not, in a suit on the bond, for the same cause of action, be intitled to an imparlance. The case from 5 Binney, 184, is an authority also for this point. There the sheriff had been previously sued and a recovery had against him, and on a suit against himself and his sureties on their recognizance, it was not pretended that the former recovery could be a bar.
Eighthly. It remains to inquire, whether the arrest of the sheriff, by attachment, or ca. sa. and his discharge under the prison bounds act, is a discharge of himself and his sureties from liability under the bond. It is true that in Thurmond’s case, 2 Carolina Law Journal, 290, and in Daniel v. Capers, 4 M‘C. 237, it was decided, that an attachment was in the nature of a civil proceeding, and, in the language of the first case, is partly a criminal, and partly a civil process : yet neither of the cases supposes that it will be a satisfaction, unless satisfaction in part results from it. In the case of the Treasurers v. Johnson, 4. M‘C. 458, it was decided, that the arrest of the principal, under a ca. sa. and his discharge by consent under the provisions of the act of 1815, does not release his sureties. It would hence follow, that the arrest under a ca. sa. would not operate *384 to discharge the sheriff, or his sureties, from their liability under the bond. An attachment, for the purpose of enforcing payment of money collected by a sheriff, is put upon the footing of a ca. sa. A discharge under the prison bounds act is only a discharge from confinement at the suit of the suing creditor for a year and a day. It cannot therefore be a discharge to the sheriff himself from the debt, much less to his sureties. The question may arise, when the sheriff, confined by an attachment, or ca. sa., is discharged under the insolvent debtor’s act, whether such a discharge will protect him from any recovery on his bond, and subject his sureties to a recovery against them quasi survivors: and to the affirmative of this question my opinion inclines.
Having thus cursorily disposed of the various grounds in these much contested cases, it only remains to give some general directions as to the manner in .which judgment is to be entered up, and execution issued, and proceeded upon, in such cases. The judgment and execution must be for the whole penalty, against the sheriff, and all the sureties who are alive. If the damages assessed are less than the penalty, they should be marked on the execution ; and upon this amount and the costs being- paid, it should be returned on the execution that the damages assessed and costs have been satisfied. If the damages assessed are more than the penalty, the execution should be marked, “ the whole penalty to be collected.” In any case where one of the sureties has paid his equal part of the penalty and the costs, he may require the sheriff or coroner to return the execution satisfied as to him : and if the fact is disputed, the sheriff or coroner should stay the enforcement of the execution, until the next term, when the Court will, on rule, decide whether satisfaction shall or shall not bo entered.
These cases are remanded to the Circuit Court, with directions to consolidate the cases, and to submit the condition of the bond to the jury to assess the damages of the plaintiffs, and upon that question to permit the defendants to show, that the judgments confessed by Bates were in any respect fraudulent. In the mean time the plaintiffs have leave in one case to sign judgment for the penalty: and for the same to issue and lodge an execution to bind property.